In the Matter of the Involuntary Termination of the Parent–Child Relationship of K.H., minor child, and her mother, Natalie Hancock.

Natalie Hancock, Appellant–Respondent,

v.

Marion County Office of Family and Children, Appellee–Petitioner,

and

Child Advocates, Inc., Appellee–Guardian Ad Litem.

No. 49A02–0503–JV–269.

Court of Appeals of Indiana.

Dec. 1, 2005.

Elizabeth Gamboa, Franklin, for Appellant.

Elizabeth G. Filipow, Indianapolis, for Appellee Marion County Department of Child Services.

Jennfer Balhon, Indianapolis, for Appellee Child Advocates, Inc.

## OPINION

CRONE, Judge.

### Case Summary

Natalie Hancock ("Mother") appeals the trial court's grant of the motion to set aside consent to adoption and agreement for post-adoption privileges filed by Marion County Office of Family and Children ("MCOFC"). We affirm.

### Issue

We restate the issue as whether Mother has met her burden of establishing reversible error.

### Facts and Procedural History

K.H. was born on May 23, 1994. On August 6, 2002, MCOFC filed a petition alleging K.H. to be a child in need of services ("CHINS") following Mother's arrest for the battery of her boyfriend. On September 18, 2003, MCOFC filed a petition for the involuntary termination of Mother's parental rights. On January 12, 2004, Mother signed a consent for her mother, Ester Myers,[1] to adopt K.H., as well as an agreement for post-adoption privileges. Neither Ester nor the court ever signed the agreement. *See* Appellant's App. at 52–53.

On January 11, 2005, MCOFC filed a motion to set aside the consent and agreement that states in pertinent part:

3. For whatever reasons not clearly defined at this time, Natalie Hancock did not execute a consent for adoption or a post-adoption agreement as to the step-grandfather, John Myers, to whom the maternal grandmother was married. Further, in a voice-mail message to the case manager, Natalie Hancock in-

dicated that she would not execute a consent for [K.H.] to be adopted by John Myers, maternal step-grandfather.

4. Throughout the period of time that the consent to adoption and the post-adoption agreement were being executed as to maternal grandmother, the biological mother, Natalie Hancock, was represented by Stacey Davis, counsel appointed by the court.

5. At the time of the execution of the consent to adoption and the post-adoption agreement the maternal grandmother was married to John Myers, step-grandfather to [K.H.]; Mr. and Mrs. Myers continue to be married to each other. Pursuant to Ind.Code § 31–19–2–4, a petition for adoption by married persons may not be granted unless the husband and wife join in the action. While Mr. and Mrs. Myers have obtained counsel for the purpose of petitioning the Court for adoption of [K.H.], the adoption of [K.H.] by Mr. and Mrs. Myers is held in abeyance because of lack of consent by the biological mother for Mr. Myers to adopt [K.H.], minor child; the consent for adoption granted only to Esther Myers is not sufficient to proceed.

6. Attempts to contact Natalie Hancock concerning the problems with proceeding with the adoption have not been successful by Ms. Hancock's attorney, Ms. Davis, or by the MCOFC case manager.

7. If the Court grants this motion to set aside the consent to adopt and the post-adoption agreement referenced herein, the MCOFC will pro-

---

1. Ester's name is spelled "Esther Meyers" elsewhere in the record.

ceed to trial as to the termination of the parental rights of Natalie Hancock, biological mother, to [K.H.], minor child.

8. Judgment was entered April 19, 2004, as to [K.H.'s alleged father], terminating any parental rights he may have held as to [K.H.], minor child; therefore, as to the alleged father, [K.H.] is free for adoption.

9. [K.H.] has resided with John and Esther Myers for an extended period of time which exceeds one year.

10. Natalie Hancock has not visited with [K.H.] for over one year.

11. Adoption of [K.H.] by John and Esther Myers is in the minor child's best interest as it will provide the permanency desired for the child.

*Id.* at 44–45.

On February 11, 2005, Mother's counsel filed an objection to MCOFC's motion that states in pertinent part:

2. Counsel has been unable to locate the Respondent and it is unclear whether Respondent understood that she could commence visitation with the minor child prior to the adoption and/or whether or not she refuses to sign specific consent to Mr. Meyer [sic].

3. Respondent's counsel hereby objects to Marion County Office of Family and Children's motion to revoke the consents and agreement because Respondent mother will be prejudiced in that she will not have an opportunity to negotiate any post adoption contact and may be denied such contact by the adoptive parents.

4. At all times relevant, the MCOFC knew or should have known Mrs. Meyer's [sic] marital status as she served as foster parent for the mi-

nor child before preparing the documents for the adoption proceedings which were executed by Respondent.

5. I.C. Section 31–19–2–4 said that a petition for adoption by a married person may not be granted unless the husband and wife join in the petition; but there is no apparent obligation for the biological parent to consent to the adoption by both spouse [sic] to effectuate privileges.

6. That there is an alternative the Court could consider to setting aside the consents.

7. In accordance with I.C. Section 31–19–16–46 the Court may void or modify a post adoption contact agreement at any time before or after an adoption.

8. The post adoption contact agreement should be modified to bind Mr. Myers to the terms of the contract.

*Id.* at 55–56.

On February 14, 2005, the trial court held a hearing on MCOFC's motion. Mother appeared by counsel. The following colloquy occurred:

THE COURT: Very good. And this is also a hearing on the Petition to Terminate, as well?

[MCOFC'S COUNSEL]: If our Motion to Set Aside the Adoption Consent is granted, I believe, we would proceed to evidence on the petition.

[MOTHER'S COUNSEL]: And, Judge, just for the record, for the record, we object. We filed a written objection and we would pretty much rest on that.

Tr. at 22. No evidence was heard. The trial court granted MCOFC's motion, denied Mother's counsel's request for continuance, and then heard evidence on the termination petition. Thereafter, the trial

court entered an order terminating Mother's parental rights.

### Discussion and Decision

Mother appeals the trial court's grant of MCOFC's motion to set aside the consent to adoption and agreement for post-adoption privileges. She makes the following argument:

> [MCOFC's claim that the consent to adoption] should be set aside rested on several factual allegations: 1) John and Ester Myers were married when the consent was signed and continued to be married at the time the adoption was proceeding; 2) Mother refused to execute the Consent to Adopt in favor of both John and Ester Myers; 3) the adoption had been held in abeyance; and 4) attempts to contact Mother had been unsuccessful.
>
> MCOFC did not, however, present any evidence to prove these factual allegations. Rather, it relied solely on the argument of counsel.

Appellant's Br. at 6.

We acknowledge that arguments of counsel are not evidence that trial courts may consider when making factual determinations. *El v. Beard,* 795 N.E.2d 462, 467 (Ind.Ct.App.2003). Nevertheless, "[a] clear and unequivocal admission of fact by an attorney is a judicial admission which is binding on the client." *Parker v. State,* 676 N.E.2d 1083, 1086 (Ind.Ct.App. 1997). At the hearing on MCOFC's motion, Mother's counsel rested on the contents of her objection, which constituted an admission that Ester and John Myers were married at all relevant times[2] and that attempts to contact Mother had been unsuccessful.[3] Regardless of whether Mother refused to execute the consent in favor of John, the fact remains that she did not do so and that the adoption and termination proceedings were pending simultaneously. Mother does not argue that the consent was valid as a matter of law, nor does she challenge the denial of the request for continuance or the merits of the termination order. "On appeal, the burden of showing reversible error is on appellant; all reasonable presumptions are indulged in favor of the rulings and judgment of the trial court." *Mead v. Salter,* 566 N.E.2d 577, 583 (Ind.Ct.App.1991). Mother has failed to carry her burden here. We therefore affirm the trial court.

Affirmed.

NAJAM, J., and BARNES, J., concur.

---

**2.** During the termination hearing, Mother's counsel asked MCOFC's case manager whether MCOFC had conducted "a background check on the grandmother" and whether "Mr. Myers her current husband" was the same person as grandmother's boyfriend who had been accused of abusing or molesting K.H. Tr. at 44. The case manager stated that she had conducted a background check and that Mr. Myers was not the same person as the boyfriend. *Id.*

**3.** In fact, Mother's counsel stated that she had not had any contact with her client and that a private investigator had been sent out "but he has not had any contact with her." Tr. at 23.